# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                                        ) | No. 23-cr-97 (JMC) |
| ) | |
| BRANDEN GREENFIELD-LOGAN ) | |
|                       Defendant.       ) | |
| ) | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Mr. Greenfield-Logan is a 33 year old, former Special Police Officer, who has lived in the Washington, D.C. metropolitan area his entire life. Mr. Greenfield-Logan fully accepts responsibility for his actions on September 26, 2021. He immediately agreed to enter into a guilty plea; and he is anxious to serve whatever penalty is forthcoming and move forward. Mr. Greenfield-Logan's actions on September 26, 2021 were out of character and he will not repeat them. He is no longer employed as a Special Police Officer and does not intend to ever seek that type of employment again. Given Mr. Greenfield-Logan's lack of criminal history, his quick and complete acceptance of responsibility, his history and characteristics, and his dedication to building a career outside of the field of Special Police Officers, a sentence of probation is sufficient but not greater than necessary to accomplish the goals of sentencing when considering all of the 18 U.S.C. § 3553(a) factors.

## BACKGROUND[1]

In September 2021, Mr. Greenfield-Logan worked as a Special Police Officer with PChange Protective Services. He predominately worked at a group of apartment buildings

---

[1] Defense counsel has received no discovery in this case and the facts as described are based on Mr. Greenfield-Logan's best recollection.

1

located in the Columbia Heights neighborhood of Washington, D.C. His employment with PChange Protective Services lasted for over eight years, from 2013 until early 2022. During those eight years, Mr. Greenfield-Logan experienced many high stress situations, including multiple shootings, individuals pulling knives, and other tense situations.

On September 26, 2021, Mr. Greenfield-Logan was stationed at the Columbia Heights Village with his partner. Other Special Police Officers patrolled in the building across the street at the Trinity Tower Apartments. At approximately 12:30 a.m., Mr. Greenfield-Logan and his partner received a request from the Special Police Officers working at Trinity Tower Apartments to assist them in an ongoing security event. An individual in the lobby of the other building had a knife and was attempting to enter a resident's apartment. The Special Police Officers working in Trinity Tower Apartments building requested assistance from Mr. Greenfield-Logan and his partner to manage the crowd that was gathering in front of the building.

Mr. Greenfield-Logan and his partner worked to separate the crowd from the situation with the knife occurring inside the building. They attempted to move the crowd away from the entrance to the unit and away from the individual with the knife. Mr. Greenfield-Logan witnessed the victim, W.S., exchange words with his partner, but he could not hear what exactly W.S. or his partner said. At some point, W.S. punched Mr. Greenfield-Logan's partner and W.S. was detained by other officers, handcuffed, and taken into the community room in the building. During this time, the individual with the knife avoided the Special Police Officers and left the building, so there was no more need to manage the crowd. Mr. Greenfield-Logan, his partner, and two supervisors were in the community room with W.S. waiting for Metropolitan Police Department ("MPD") officers to arrive. W.S. was standing against the wall while other Special Police Officers checked W.S.'s pockets. W.S. began to fight the other Special Police Officers

and they took him to the ground before sitting him in a chair to wait for MPD to arrive. W.S. continued to shout at the Special Police Officers, cursing at them and calling them names, making mild threats, and indicating he was going to spit on the Special Police Officers. Mr. Greenfield-Logan reacted out of character and slapped W.S. Mr. Greenfield-Logan immediately left the community room. Special Police Officers continued to wait for MPD to arrive, but they never did. The Special Police Officers released W.S.

On March 27, 2023, the government filed an Information charging Mr. Greenfield-Logan with one misdemeanor count of deprivation of rights under color of law pursuant to 18 U.S.C. § 242. Mr. Greenfield-Logan immediately indicated his desired to accept responsibility and enter into a plea agreement with the government. On April 6, 2023, Mr. Greenfield-Logan appeared before the Court for an arraignment. The Court scheduled a combined plea and sentencing hearing for April 26, 2023 at 10:30 a.m.

## ARGUMENT

### I. Legal Standard

When imposing a sentence, the Court must consider several factors, including (1) the United States Sentencing Guidelines; (2) the nature and circumstances of the offense; (3) the history and characteristics of the defendant; (4) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence to criminal conduct, along with the kinds of sentences available; and (5) the need to avoid unwarranted disparities. *See* 18 U.S.C. § 3553(a); *United States v. Booker*, 543 U.S. 220, 259 (2005).

Congress has further provided that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are

3

>applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

*See* 18 U.S.C. § 3582 (emphasis added). With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "*sufficient, but not greater than necessary*, to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a) (emphasis added).

When sentencing a defendant, the Court "may not presume that the Guidelines range is reasonable." *Gall v. United States*, 552 U.S. 38, 50 (2007). Rather, the Court must treat the Guidelines "as one factor among several" that § 3553(a) requires the Court to consider. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). Once the Court correctly calculates the sentence that the Guidelines recommend, the Court must then "make an individualized assessment," considering the remaining factors set forth in § 3553(a). *Gall*, 552 U.S. at 50. Because the Guidelines merely reflect a "wholesale" view "rough[ly] approximat[ing] . . . sentences that might achieve § 3553(a)'s objectives," *Booker* and § 3553(a) require the Court to tailor an individualized sentence that actually does achieve § 3553(a)'s objectives in the case before it. *Rita v. United States*, 551 U.S. 338, 348, 350 (2007). Consequently, this Court must "filter the Guidelines' general advice through § 3553(a)'s list of factors." *Id*. at 358; *see also Gall*, 552 U.S. at 52 ("'It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996))).

### II.     The Sentencing Guidelines

Mr. Greenfield-Logan agrees with the Guidelines calculated in the plea agreement. The total offense level is 13 and, with no criminal history, the criminal history category is I. The

applicable advisory Guidelines range is 12-18 months, but the statutory maximum sentence is 12 months incarceration.

**III.   Imposing a Sentence of Probation is Sufficient, But Not Greater Than Necessary, to Comply with § 3553(a).**

**A. Mr. Greenfield-Logan's History and Characteristics**

Mr. Greenfield-Logan was born in Maryland in 1989 and grew up in Mitchellville, Maryland. His parents did not live together when he was growing up and he was primarily raised by his mother and stepfather. Mr. Greenfield-Logan has four siblings, two younger brothers and two younger sisters. He is very close with his family and he spends time with his siblings often. Mr. Greenfield-Logan has also always supported his extended family, especially his cousins and grandparents. He helped his cousins after the death of their mother and lived with his grandparents for a period to assist with his grandmother's physical therapy. *See* Ex. 1, Letter from Simone Logan at 1-2.

Mr. Greenfield-Logan graduated from Bowie High School in 2007 before enrolling at Tuskegee University where he studied Animal Science. Mr. Greenfield-Logan has always loved animals and spent a lot of time growing up with his grandfather, who is a dog trainer. As a result, Mr. Greenfield-Logan studied for a career that involved caring for and training animals. Unfortunately, after two years at Tuskegee University, Mr. Greenfield-Logan had to leave school because he could no longer afford the tuition. Mr. Greenfield-Logan tried to continue his education at Prince George's County Community College, but, after two semesters, he once again had to leave school for financial reasons.

During this period, Mr. Greenfield-Logan's passion for animals continued. He worked at a small local pet store for about three years before joining Petco as a dog trainer and dog nutrition specialist. In 2013, with the encouragement and support of his now-wife, Mr.

5

Greenfield-Logan began his own business to train dogs. His business is called *Cave Canem* (Latin for "beware of dog").

At the same time, in 2013, Mr. Greenfield-Logan received his Special Police Officer license and began working for Butler Security, later moving to PChange Protective Services when part of the company split from Butler. Mr. Greenfield-Logan continued to run his dog training business on the nights and weekends. In addition, because Mr. Greenfield-Logan did not intend to work permanently as a Special Police Officer, he started taking courses in information technology, specifically hardware and networking, and he earned his certification around Thanksgiving of 2019.

Once he received that certification, Mr. Greenfield-Logan worked multiple jobs at once. During the days, he worked for various information technology recruiting companies and performed contracted work at Department of Treasury, T. Rowe Price, and finally the Pentagon Federal Credit Union. At night, he worked as a Special Police Officer. In his remaining time, he continued with his passion for training dogs.

After leaving PChange Protective Services in early 2022, Mr. Greenfield-Logan continued with his day job as a service desk analyst with Elite Technical, deployed to work at Pentagon Federal Credit Union. He is also taking additional cybersecurity courses at University of Maryland Global Campus, continues to train dogs, and is committed to growing his dog training business in the future. *See* Ex. 1 at 2.

Mr. Greenfield-Logan's history and characteristics demonstrate that he is a driven and hard-working individual. He often worked multiple jobs at once, both to pay off student loans and to create the financial security he desired before starting his own family. Mr. Greenfield-Logan's actions on September 26, 2021 are an extreme outlier from the life he has lived to date

and his history and characteristics demonstrate that a sentence of incarceration is not necessary, but a sentence of probation is sufficient.

Since September 26, 2021, Mr. Greenfield-Logan has kept moving forward and continued to work extremely hard. After a lull during the pandemic, Mr. Greenfield-Logan's dog training business is getting back on its feet and he is dedicated to continuing to invest in the business and grow his clientele. Mr. Greenfield-Logan got married in October 2022 and his wife is his greatest source of support and encouragement, as she has been since they met in 2013. *See* Ex. 1. With the support of his wife and family, Mr. Greenfield-Logan takes full responsibility for his actions on September 26, 2021, but that event does not truly reflect the person Mr. Greenfield-Logan is, or his potential for the future.

### B. Nature and Circumstances of the Offense

Mr. Greenfield-Logan admits that he slapped W.S. on September 26, 2021. *See* Ex. 2, Letter from Branden Greenfield-Logan. The situation in the building was tense and Mr. Greenfield-Logan let his emotions get the better of him after W.S. punched his partner, resisted Special Police Officers attempting to search his pockets, and repeatedly shouted insults and threats towards Mr. Greenfield-Logan and the other Special Police Officers. During Mr. Greenfield-Logan's time as a Special Police Officer, he encountered many dangerous and stressful situations, including shootings, acts of physical violence, and the presence of individuals with weapons. Mr. Greenfield-Logan has no prior, or later, instances of using improper force during his over eight years as a Special Police Officer.

After September 26, 2021, PChange Protective Services took Mr. Greenfield-Logan off the assignment calendar while his office considered whether further action was appropriate. In 2022, Mr. Greenfield-Logan returned to work as a Special Police Officer at a different location.

Mr. Greenfield-Logan continued to work with PChange Protective Services for a few months in 2022, when he asked to be removed from the schedule permanently and continued to work full time with Elite Technical.

Mr. Greenfield-Logan immediately regretted the action he took on September 26, 2021. It was completely out of character and not something Mr. Greenfield-Logan had ever done before or will ever do again. *See* Ex. 2. He complied fully with all investigations conducted by his employer and as soon as he was contacted by the United States Attorney's Office with respect to this case, he found counsel and attended a debrief. Since September 26, 2021, Mr. Greenfield-Logan has always intended to take responsibility for his actions should any charges arise and that is exactly what he has done here. He entered an exceptionally fast guilty plea and agreed to proceed directly to sentencing to limit significantly the time and resources expended by the United States Attorneys' Office and the Court. Mr. Greenfield-Logan wants to move forward with his life and accepting responsibility for his actions was an important step for him to feel as if he could move forward.

A sentence of probation is sufficient, but not greater than necessary when the Court considers the nature and circumstances of the offense.

### C. The Need to Promote Respect for the Law, Provide Just Punishment, Protect the Community and Provide Adequate Deterrence, and the Need to Avoid Unwanted Sentencing Disparities

Mr. Greenfield-Logan has no prior criminal history and no history of violence of any kind. He served as a Special Police Officer without incident for almost all of his eight years with Butler and PChange Protective Services. Mr. Greenfield-Logan surrendered himself to the U.S. Marshals for processing prior to the initial appearance; and he is complying with his conditions of pretrial release. Mr. Greenfield-Logan has accepted responsibility for his actions and a

sentence of probation is sufficient but not greater than necessary to promote respect for the law, provide just punishment, and protect the community.

Mr. Greenfield-Logan no longer works as a Special Police Officer and does not intend to do so ever again. The conduct was an aberration during his time as a Special Police Officer and a sentence of incarceration is not necessary to deter future conduct by Mr. Greenfield-Logan or the community. Additionally, Sentencing Commission data analyzing recidivism rates shows that individuals, like Mr. Greenfield-Logan, with zero criminal history points have considerably lower recidivism rates, including lower recidivism rates than the individuals in Criminal History Category I with one criminal history point. *See* United States Sentencing Commission, *Recidivism of Federal Offenders Released in 2010* (Sept. 2021), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210930_Recidivism.pdf. The Commission found that just over one-quarter (26.8%) of individuals with zero criminal history points were rearrested. *Id*. at 26. The rearrest rate of zero-point individuals was significantly lower than individuals with just one criminal history point, of which 42.3% were rearrested. *Id*. The variation between individuals with zero and one criminal history point was the largest variation of any comparison of offenders within the same Criminal History Category. *Id*. Mr. Greenfield-Logan's zero criminal history points makes him statistically less likely to reoffend or be rearrested. The low likelihood of rearrest supports a finding that a sentence of probation is sufficient, but not greater than necessary, to provide adequate deterrence and protect the public.[2]

---

[2] The Sentencing Commission report also found that "[f]ewer than one third (29.3%) of offenders sentenced to probation were rearrested[; and o]ffenders sentenced to a probation term of any length had lower rearrest rates compared to offenders sentenced to prison." *Id*. at 36.

Finally, a comparison of data from the Commission's Judiciary Sentencing Information ("JSIN") for offenders with the same primary guideline, criminal history category, and offense level demonstrates that a sentence of probation would not create an unwarranted disparity. In fact, a majority of offenders with the same primary guideline, criminal history category, and offense level receive a sentence of probation or a fine. According to JSIN data, in fiscal years 2017 through 2021, not including offenders who received substantial assistance departures, 20 offenders whose primary guidelines was § 2H1.1 had a final offense level of 13 and were in criminal history category I, like Mr. Greenfield-Logan. Of those 20 individuals, 90% received a downward departure or variance and 65% received a sentence of probation or a fine.[3] *See* https://jsin.ussc.gov/analytics/saw.dll?Dashboard. In other words, more than half of the offenders with the same advisory guideline range as Mr. Greenfield-Logan received a sentence of probation. Thus, the JSIN data demonstrates that a downward variance under similar circumstances is typical and, in fact, a Guidelines sentence would cause an unwarranted disparity.

A sentence of probation is sufficient, but not greater than necessary to reflect the purposes of punishment, to promote respect for the law, provide just punishment, protect the community, and provide adequate deterrence. A sentence of probation will also not create unwarranted sentencing disparities, but is consistent with other cases sentenced under the same sentencing Guideline and applicable advisory Guidelines range.

---

[3] Of the individuals that did receive a sentence of incarceration, the average length was 5 months and the median length was 2 months.

## **CONCLUSION**

For the reasons described above and for any other reason the Court finds, a sentence of probation is sufficient but not greater than necessary to satisfy the purposes of punishment.

                    Respectfully submitted,

                    A.J. KRAMER
                    FEDERAL PUBLIC DEFENDER

                    _____/s/_____
                    Diane Shrewsbury
                    Assistant Federal Public Defender
                    625 Indiana Avenue NW, Ste. 550
                    Washington, D.C. 20004
                    (202) 208-7500
                    Diane_Shrewsbury@fd.org